# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED AFRICAN-ASIAN ABILITIES CLUB, JAMES LEE,<br><br>    Plaintiffs,<br><br>  v.<br><br>ASP MOHAWK, LLC; DOES 1 THROUGH 10,<br><br>    Defendants. | Case No. 25-cv-0476-BAS-MSB<br><br>**ORDER DECLINING SUPPLEMENTAL JURISDICTION** |

The Complaint filed in this action asserts a claim for injunctive relief arising out of an alleged violation of the federal Fair Housing Act, Americans with Disabilities Act ("ADA") and a claim for damages pursuant to California's Unruh Act and other state-law claims. (ECF No. 1.). On March 3, 2025, the Court ordered Plaintiffs to show cause why the Court should not decline to exercise supplemental jurisdiction over Plaintiffs' Unruh Act claim. (OSC, ECF No. 3.) Plaintiffs responded to the Order to Show Cause two days late and without an accompanying motion to accept the late-filed response. (Response, ECF No. 4.) Having considered Plaintiffs' response, the Court finds exercise of supplemental jurisdiction is not warranted under the circumstances. Accordingly, Plaintiffs' Unruh Act claim is **DISMISSED WITHOUT PREJUDICE** to filing in state court.

## I. LEGAL STANDARD

A district court may exercise supplemental jurisdiction over "all other claims that are so related to the claims in the action within such original jurisdiction that form part of the same case or controversy under Article III of the U.S. Constitution." 28 U.S.C. § 1367(a). That a court may exercise supplemental jurisdiction, however, "does not mean that the jurisdiction must be exercised in all cases." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997). Supplemental jurisdiction is ultimately "a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties." *Id.* Under the supplemental jurisdiction statute, a district court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c).

Where a district court invokes section 1367(c)(4)'s "exceptional circumstances" provision, it must satisfy a two-part inquiry: (1) the "district court must articulate why the circumstances of the case are exceptional within the meaning of § 1367(c)(4)," *Arroyo v. Rosas*, 19 F.4th 1202, 1210 (9th Cir. 2021) (citation omitted), and (2) "in determining whether there are compelling reasons for declining jurisdiction . . . the court should consider what 'best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine,'" *id.* (quoting *Int'l Coll. of Surgeons*, 522 U.S. at 172–73). To satisfy this "case-specific" inquiry under Section 1367(c)(4), the court "needs to only identify the exceptional circumstances [and compelling reasons] and confirm that they apply to the *particular case* before it." *Vo v. Choi*, 49 F.4th 1167, 1173 (9th Cir. 2022).

## II. ANALYSIS

### A. The ADA and the Unruh Act

The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Under the ADA, injunctive relief is the only remedy available to a private litigant. *Id.* § 12188(a).

In passing the Unruh Act, however, California "chose a different route" and created "a state law cause of action that relies dispositively on the ADA's substantive rules but that expands the remedies available in a private action." *Arroyo*, 19 F.4th at 1211. Under the Unruh Act, all persons in California, "no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). A violation of the ADA constitutes a violation of Section 51 of the Unruh Act. *Id.* § 51(f). Yet, unlike the ADA, the Unruh Act not only provides for injunctive relief, but also allows for recovery of monetary damages for every offense "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)." *Id.* § 52(a).

In 2012 and 2015, California changed the procedural requirements for filing construction-related accessibility claims under the Unruh Act to address the issue of some attorneys "abusing the Unruh Act by demanding 'quick money settlement[s]' from California business owners 'without seeking and obtaining actual repair or correction of the alleged violations on the site.'" *Arroyo*, 19 F.4th at 1206 (citing Act of Sept. 19, 2012, ch. 383, § 24, 2012 Cal. Stat. 3843, 3871). These changes included regulating the language permissible in demand letters for construction-related accessibility claims, Cal. Civ. Code § 55.31, and mandating that a notice for such claims be served along with the summons and complaint, *id.* § 55.54. Critically, California provided additional procedural safeguards where claims were brought by litigants deemed to be "high-frequency litigants" of construction-related accessibility claims. *See* Cal. Civ. Proc. Code § 425.55. The

legislature included these safeguards "so as to ensure that the claims are warranted." *Id.* § 425.55(b). Under the changes, high-frequency litigants are required to pay an additional $1,000 filing fee "if the complaint alleges a construction-related accessibility claim." Cal. Gov't. Code § 70616.5.

In this Court's Order to Show Cause, the Court ordered Plaintiffs to identify whether California state courts would consider them to be "high-frequency litigant[s]" under the California legislature's procedural safeguards. (ECF No. 3.) Plaintiffs fail to identify whether they would be considered as such, and therefore the Court assumes they would.[1]

## B. Supplemental Jurisdiction

The Court is similarly unpersuaded by the lack of any argument by Plaintiffs that the *Gibbs* factors favor the Court retaining jurisdiction over Plaintiffs' Unruh Act claim. This case presents "exceptional circumstances" and "there are compelling reasons," primarily based on comity and fairness, for declining jurisdiction over Plaintiffs' Unruh Act claim, which outweigh the other factors. 28 U.S.C. § 1367(c)(4). The Court reaches this conclusion after conducting the "two-part inquiry" laid out in *Arroyo*. 19 F.4th at 1210.

### 1. Exceptional Circumstances

First, the Court considers whether exceptional circumstances exist in this case. "Exceptional circumstances" under Section 1367(c)(4) include "at the very least . . . highly unusual situations that threaten to have a substantial adverse impact on the core *Gibbs* values of 'economy, convenience, fairness, and comity.'" *Arroyo*, 19 F.4th at 1211 (quoting *Int'l Coll. of Surgeons*, 522 U.S. at 172–73).

The Ninth Circuit agreed with the district court's finding in *Arroyo* that the circumstances were exceptional where "the distinctive configuration of California-law

---

[1] Plaintiffs instead make the following ambiguous statement: "Plaintiffs assert they could potentially substantiate the non-applicability of CA CCP §425.55(b)(1)–(2) to the Unruh Act claim in the present Fair Housing Act action context. However, Plaintiffs are willing to currently waive those arguments for the court to retain supplemental jurisdiction over their Unruh Act claim." (ECF No. 4 at 3.) Stating that they could present an argument for why they may not be deemed "high-frequency litigants" is not the same as actually presenting it.

rules . . . would be rendered ineffectual if the district court were to exercise supplemental jurisdiction." *Arroyo*, 19 F.4th at 1211. Here, as in *Arroyo*, those same California rules are rendered ineffectual where plaintiffs such as those here are permitted to raise these claims in federal court and thus skirt California's rules. Indeed, it appears that both the United African-Asian Abilities Club has taken full advantage of this workaround. Since 2015, for example, the United African-Asian Abilities Club and James Lee have filed over 150 cases in this district alone, filing roughly 75 of them within the last year.[2] Meanwhile, James Lee has filed 144 cases in this district since February 8, 2023.[3] Therefore, the exceptional circumstances here are the same as they were in *Arroyo*—high-frequency litigants like the United African-Asian Abilities Club and James Lee are still avoiding California's requirements by bringing their construction-related accessibility claims into federal court. By doing so, they have "thwarted the California Legislature's goal of providing damages relief for ADA violations while limiting the financial burdens that California's businesses may face from damages actions." *Frazier v. Ramirez*, No. 2:24-cv-06294-MRA-MAA, 2024 WL 4406814, at *4 (C.D. Cal. Aug. 27, 2024).

Therefore, this Court "cannot stray from *Arroyo*'s conclusion that the first prong of the § 1367(c)(4) inquiry is met." *Vo*, 49 F.4th at 1171. Accordingly, this Court finds that exceptional circumstances justify the Court's discretion to decline to exercise supplemental jurisdiction over Plaintiffs' Unruh Act claim in this action under 28 U.S.C. § 1367(c)(4).

### 2. Compelling Reasons

The Court next considers the second prong of the Section 1367(c)(4) inquiry, whether there are "compelling reasons for declining jurisdiction" in this case "consider[ing] what best serves the principles of economy, convenience, fairness, and

---

[2] This number is derived from a search of PACER conducted on April 16, 2025, for the United African-Asian Abilities Club as a plaintiff, which produced a list of 158 cases filed in this district since January 19, 2015.

[3] This number is derived from a search of PACER conducted on April 16, 2025, for James Lee as a plaintiff, which produced a list of 144 cases filed in this district since February 8, 2023.

comity which underlie the pendent jurisdiction doctrine articulated in *Gibbs*." *Arroyo*, 19 F.4th at 1210 (citation omitted).

Here, fairness and comity overwhelmingly weigh in favor of declining supplemental jurisdiction over Plaintiffs' Unruh Act claim. In *Vo*, the Ninth Circuit affirmed a district court opinion on similar facts, holding that:

> it would not be "fair" to the defendants if plaintiffs could bypass the "limitations California state law has imposed" on Unruh Act claims by simply bringing them in federal court. Moreover, the [district] court noted that allowing federal courts to be an "escape hatch" for plaintiffs seeking to avoid the heightened requirements would be an "affront to the comity between federal and state courts."

*Vo*, 49 F.4th at 1168–69 (favorably citing the lower court's decision declining to exercise supplemental jurisdiction). In short, the Ninth Circuit has already held that in circumstances such as these the values of fairness and comity weigh heavily in favor of declining supplemental jurisdiction. Plaintiffs' response to this Court's Order to Show Cause wholly fails to distinguish the circumstances of this case from those of *Vo*. (*See generally* ECF No. 4.)

As in *Vo*, this Court has the opportunity to decline supplemental jurisdiction over the Unruh Act claim "well before [] rul[ing] on the merits of the ADA claim," and therefore the values of economy and convenience also weigh in favor of declining jurisdiction. *Vo*, 49 F.4th at 1172. In *Vo*, the Ninth Circuit clarified that "[t]he fatal flaw we identified in the *Arroyo* district court's order was that it waited until a 'very late stage' of the litigation to decline supplemental jurisdiction." *Id.* at 1171–72. In *Arroyo*, even though "many of the *Gibbs* values *could have* been furthered by refusing supplemental jurisdiction over the Unruh Act claim in that case, . . . doing so at that late point in the litigation would not actually effectuate any of those values" because it would "merely create duplicative work for the state court." *Id.* at 1172 (citation omitted). In *Arroyo*, the district court declined to exercise supplemental jurisdiction over the state-law claim after the case went through summary judgment. Here, as in *Vo*, those concerns are not present because this case is still

in its very early stages—the defendant has yet to appear, and therefore declining supplemental jurisdiction now "completely sidesteps the core concern articulated in *Arroyo*." *Id.*

Accordingly, at this early stage of litigation, the *Gibbs* values are best served by declining supplemental jurisdiction over Plaintiffs' Unruh Act claim. Both exceptional circumstances and compelling reasons exist for the Court to exercise its discretion to decline supplemental jurisdiction over Plaintiffs' Unruh Act claim.

## III. CONCLUSION

For the foregoing reasons, the Court declines to exercise supplemental jurisdiction over Plaintiffs' Unruh Act claim. The claim is hereby **DISMISSED WITHOUT PREJUDICE** for Plaintiff to assert it in state court. The Court retains jurisdiction over Plaintiffs' remaining claims.

**IT IS SO ORDERED.**

DATED: April 16, 2025

Hon. Cynthia Bashant, Chief Judge
United States District Court